UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 1:20-cv-00197-FDW

| RITA HALL, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) |
|  | ) ORDER |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security[1] | ) |
| Defendant. | ) |

THIS MATTER is before the Court upon Rita Hall's Motion for Summary Judgment, (Doc. No. 15), and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") Motion for Summary Judgement (Doc. No. 17). Hall, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Title II Disability Insurance Benefits ("DIB"). Both motions are now ripe for review. For the following reasons, the Court DENIES Hall's Motion for Summary Judgment, (Doc. No. 15), and GRANTS Commissioner's Motion for Summary Judgment, (Doc. No. 17), and the Administrative Law Judge's ("ALJ") decision is AFFIRMED.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25 (d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

# I. BACKGROUND

On July 6, 2017, Hall applied for Title II DIB and Title II disabled widow's benefits.[2] (Doc. No. 1, p. 2). Hall claims her disability began on June 15, 2017. (Id. at p. 3). After her application was rejected, Hall appeared before the ALJ, who returned an unfavorable decision on August 20, 2019. (Id. at p. 2).

The ALJ found Hall was not disabled and instead found she retained the residual functional capacity ("RFC") to complete light work, was able to return to her past work as a cashier, and could adjust to other work existing in significant numbers in the national economy. (Doc. No. 13-1, p. 30). The ALJ arrived at this decision via the five-step process of 20 C.F.R. § 404.1520(a). (See Doc. No. 13-1, p. 17). At step one, the ALJ found Hall had not engaged in substantial gainful activity since June 15, 2017. (Id. at p. 19). At step two, the ALJ determined Hall suffered from the following severe impairments that significantly limited her ability to perform basic work activities: carpal tunnel syndrome, degenerative joint disease, chronic venous insufficiency, headaches, depression, and anxiety. (Id.) At step two, the ALJ also determined Hall suffered from irritable bowel syndrome and elevated blood pressure, but those two conditions, along with her depression and anxiety, were well controlled. (Id. at 19-20). At step three, the ALJ determined none of Hall's impairments, nor any combination thereof, met or medically equaled the severity of the listed impairments in 20 C.F.R. § 404(P) App. 1. (Id. at 20). At step four, the ALJ determined Hall had the RFC to perform the following:

> [L]ight work as defined in 20 C.F.R. 404.1567(b) except the Claimant can never climb ladders, ropes, or scaffolds, or crawl, can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. The claimant can perform frequent handling, fingering, and feeling bilaterally, but should avoid concentrated exposure to

---

[2] Hall has since been remarried and no longer eligible for widow's benefits. Hall no longer seeks this claim, and it will not be discussed further.

hazards, vibrations, fumes, and other respiratory irritants, and can perform simple, routine, repetitive work.

(Id. at 22). At step four, the ALJ also found, with assistance of a vocational expert's ("VE") testimony, Hall could return to past relevant work as a cashier. (Id. at 29). Finally, at step five the ALJ—also with the testimony of the VE—found there were other jobs in the national economy Hall could perform with her RFC. (Id.). Based upon the findings at each of the five steps, the ALJ held Hall was "not disabled under sections 216(i) and 223(d) of the Social Security Act." (Id. at p. 30).

On July 23, 2020, Hall filed this action pursuant to "42 U.S.C. § 206," which the Court construes as an action pursuant to 42 U.S.C. § 405(g), since Hall has exhausted all appeal processes prior to arriving before this Court.[3] (Doc. No. 1, p. 2). The crux of Hall's argument rests on her testimony at the hearing before the ALJ. (See Doc. No. 16, p. 8). In her testimony, Hall described her limitations in using her hands due to numbness from carpal tunnel syndrome, limitations in sitting and standing due to blood clots, and inability to work due to depression. (Doc. No. 16, p. 5-6). Hall argues the ALJ committed two errors; (1) he failed to provide "an accurate and logical bridge between the evidence presented and the conclusion that the claimant's testified limitations are not supported," and (2) as a result of failing to provide a logical bridge, the ALJ "failed to give appropriate weight to the opinions expressed by . . . the vocational expert, who testified regarding the limitations of functioning and presence in the workplace of the hypothetical individual, which

---

[3] 42 U.S.C. § 206 does not pertain to any matter before the Court. Commissioner notes the jurisdiction of the action is proper under 42 U.S.C. § 405(g). (Doc. No. 12, p. 1). This Court finds Hall's quoted language "authorizing judicial review of any final decision of the Defendant herein," (Doc. No. 1, p. 2), to match that of 42 U.S.C. § 405(g), and here by assumes Hall's claim to be brought under § 405(g).

testimony was consistent with the limitations of [the] Plaintiff established in the evidence." (Doc. No. 16, p. 10).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62. (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL

374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015). If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. DISCUSSION

**a. Plaintiff's First Assignment of Error**

Plaintiff argues the ALJ failed to provide an accurate and logical bridge between evidence and the conclusion that Hall's testified limitations are not supported.

6

Before assigning an RFC, the ALJ's "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio, 780 F.3d at 636). The Fourth Circuit requires the ALJ to "build an accurate and logical bridge from the evidence to his conclusion," see Monroe, 826 F.3d at 189, accomplished by "a record of the basis for the ALJ's ruling . . . [and] a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Monroe, 826 F.3d at 189.

Boilerplate language is a template drafted by the Social Security Administration for insertion into ALJ opinions. Mascio, 780 F.3d at 639 n.9. Use of boilerplate language "conflicts with the agency's own regulation," but is a harmless error if the ALJ "properly analyzed credibility elsewhere." Id. at 639.

Here, the ALJ provided substantial evidence for the conclusion that Hall retained the RFC to perform light work and did not err in finding Hall's testimony to be not credible. Hall contends the medical evidence supports her testimony as to the severity of her physical limitations and cites six clinical records which "should have satisfied the 'logical bridge' requirement." (Doc. No. 16, p. 11-13). In his report, the ALJ addresses Hall's testimony and describes her physical limitations in handling, sitting, standing, headaches, depression, and anxiety, but finds her "statements about the intensity, persistence, and limiting effects of his or her symptoms . . . inconsistent as a whole." (Doc. No. 13-1, p. 23). The ALJ summarized Hall's medical record chronologically by each relevant impairment—including those six clinical records Hall cites in her argument—detailing treatment, diagnosis, and observations made. (Id., pp. 23-29; see Doc. No. 16, pp. 11-13). For

7

example, the ALJ lists Hall's medical history of carpal tunnel: beginning with the initial complaint of "numbness in her right hand" in June of 2016; suspected carpal tunnel by Dr. Dean in March of 2017; undergoing carpal tunnel release procedure in June of 2017; and finally, in January of 2018, with Dr. Seagle noting "some decreased grip strength, right worse than left." (Doc. No. 13-1, pp. 23-24). Similarly, the ALJ also notes: examination results of "full strength in all her extremities, including grip strength" in June of 2016; "full strength in her elbows, shoulders, wrists, and finger bilaterally" in May of 2017; and in January of 2018, Hall exhibited a "negative Tinel's and Phalen's signs," the ability "to dress and undress, and . . . normal manual dexterity." (Id.) Based on the record, the ALJ concluded:

> [T]he undersigned notes the claimant was observed to have some decreased grip strength bilaterally (Exhibit 8F). However, the claimant was also noted to be able to dress and undress herself, and was noted to display normal manual dexterity with her hands at the same examination (Exhibit 8F). Accordingly, the undersigned finds that the claimant can perform frequent handling, fingering, and feeling with her hands bilaterally.

(Doc. No. 13-1, p. 27). This in-depth and logical analysis is present throughout the report and is likewise repeated pertaining to Hall's other testified medical limitations of ambulatory ability; headaches; blood clots and vein insufficiency; and mental health. (See id. at pp. 23-27). The Court finds the ALJ provided a full analysis to support his finding that Hall's testimony was inconsistent with the record, as well as the analysis to support the conclusion that Hall retained the RFC to perform light work.

While it has not been conceded that the ALJ utilized boilerplate language, usage of language alone is not grounds for remand if proper analysis is also contained in the report. Within Hall's first alleged assignment of error, she points to a paragraph in the ALJ's report she claims is "boilerplate language," and insists this is evidence of a lack of analysis. The Court finds the ALJ

8

provided sufficient analysis notwithstanding the additional inclusion of certain boilerplate language. Therefore, any inclusion of the alleged boilerplate language constituted a harmless error.

**b. Plaintiff's Second Assignment of Error**

Plaintiff argues that because the ALJ failed to build the "logical bridge" between evidence and conclusion, the ALJ also failed to give appropriate weight to the opinion of the VE that was consistent with limitations as described in Hall's testimony. The ALJ instead gave weight to the opinion of the VE that did not include the limitations to which Hall testified.

A hypothetical posed by an ALJ should include all findings of functional limitations that are supported by substantial evidence. See Cline v. Chater, 82 F.3d 409, 409 (4th Cir. 1996) (finding no error when the ALJ did not include the claimants testified "inability to grip with his left hand," noting the medical record held no reference to such physical problem). Neither excluding nor including an unsupported limitation with a limited functional capacity is grounds for remand. See id. When faced with two conflicting VE testimonies, an ALJ need only identify the reasons why one finding is more credible than the other and support the conclusion with substantial evidence. See Hailey v. Comm'r of Soc. Sec., 284 F. App'x 100, 104-05 (4th Cir. 2008).

Hall contends the ALJ did not give appropriate weight to the VE's testimony. The ALJ prompted the VE with two hypotheticals: one with an individual having the RFC for light work with the above-mentioned restrictions ("Hypothetical One"), and the other according to the restrictions described in Hall's testimony ("Hypothetical Two"). (Doc. No. 13-1, pp. 72-73). When prompted with Hypothetical One, the VE testified the hypothetical individual could perform work as a cashier and other jobs in the national economy. (Id., p. 72). When prompted with

9

Hypothetical Two, the VE testified the limitations "would rule out all gainful employment." (Id., p. 73). Hall argues the ALJ failed to provide an accurate and logical bridge for disregarding Hall's testimony, and therefore the ALJ further failed to give appropriate weight to the VE's testimony, specifically the testimony in response to Hypothetical Two. (Doc. No. 16, p. 10). As the Court determined earlier, the ALJ provided a full and logical analysis for his conclusion to disregard Hall's testified limitations and instead concluded Hall could perform at an RFC for light work. In his report, the ALJ utilized the VE's testimony in response to Hypothetical One and found there existed jobs in the national economy that Hall could perform including to her past work. (Doc. No. 13-1, p. 30).

While Hall further claims "[her] testimony was well supported by the opinion of the vocational expert that she could not return to her past work," this misconstrues the role of VE testimony. (Doc. No. 16, p. 17). An ALJ utilizes VE testimony in determining a claimant's capacity to engage in work dependent on the claimant's RFC. See 20 C.F.R. §§ 404.1560, 404.1566. A VE's testimony is not evidence used to bolster a claimant's testimony.

The ALJ posed multiple hypotheticals to the VE but only utilized the testimony in response to Hypothetical One. The ALJ also provided analysis for determining Hall's testified limitations were unsupported. Posing multiple hypotheticals to a VE is not grounds for remand, and conflicting VE testimonies may be resolved by an explanation for finding one as more credible than the other. Accordingly, this Court finds no error in the ALJ's determination of weight of the VE's testimony.

## IV. CONCLUSION

For the foregoing reasons, Hall's Motion for Summary Judgment (Doc. No. 15) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 17) is GRANTED; and the ALJ's determination is AFFIRMED.

IT IS SO ORDERED.

Signed: August 12, 2021

Frank D. Whitney
United States District Judge